UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Christopher M. Palermo

     v.                                         Civil No. 08-cv-126-JL

Ron White, Superintendent,
Merrimack County Department
of Corrections, et al.[1]

## O R D E R

Before the Court is Christopher Palermo's complaint
(document no. 1), filed pursuant to 42 U.S.C. § 1983 and the
Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §
2000cc ("RLUIPA").[2]  Palermo filed this action while housed at
the Merrimack County Department of Corrections ("MCDC"), alleging
that the defendants, employees of the MCDC, have violated his
federal constitutional and statutory rights to freely exercise

---

[1]In addition to Ron White, Palermo names the following
Merrimack County Department of Corrections employees as
defendants to this action: Corrections Officer Jim Lewko,
Chaplain Bill Plenge, Corrections Officer Dan Wells, Kitchen
Officer Kevin Austin, and Physician's Assistant Paul Sylvester.

[2]Although Palermo does not specifically cite the RLUIPA as
grounds for relief in this matter, I find that, construed
liberally, the complaint alleges a claim under the RLUIPA and I
will consider that claim, as described in this Order, to have
been raised in the complaint.

his religion, and his constitutional rights to equal protection
of the laws, adequate vision care, meaningful access to the
courts, and not to be placed in danger during his incarceration.
The complaint is before me for preliminary review to determine
whether, among other things, it states any claim upon which
relief might be granted.  See 28 U.S.C. § 1915A; United States
District Court District of New Hampshire Local Rule ("LR")
4.3(d)(2).

Standard of Review

Under this Court's local rules, when an incarcerated
plaintiff commences an action pro se and in forma pauperis, the
magistrate judge is directed to conduct a preliminary review.
Id.  In conducting the preliminary review, the Court construes
pro se pleadings liberally, however inartfully pleaded.  See
Erickson v. Pardus, ___ U.S. ___, 127 S. Ct. 2197, 2200 (2007)
(following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines
v. Kerner, 404 U.S. 519, 520-21 (1972) to construe pro se
pleadings liberally in favor of the pro se party).  "The policy
behind affording pro se plaintiffs liberal interpretation is that
if they present sufficient facts, the court may intuit the
correct cause of action, even if it was imperfectly pled."  See

<u>Castro v. United States</u>, 540 U.S. 375, 381 (2003) (noting that
courts may construe pro se pleadings so as to avoid
inappropriately stringent rules and unnecessary dismissals of
claims); <u>Ahmed v. Rosenblatt</u>, 118 F.3d 886, 890 (1st Cir. 1997).
All of the factual assertions made by a pro se plaintiff and
inferences reasonably drawn therefrom must be accepted as true.
<u>See</u> <u>Aulson v. Blanchard</u>, 83 F.3d 1, 3 (1st Cir. 1996) (stating
the "failure to state a claim" standard of review and explaining
that all "well-pleaded factual averments," not bald assertions,
must be accepted as true."  This review ensures that pro se
pleadings are given fair and meaningful consideration.

<u>Background</u>

1.  <u>Facts Relating to Religious Practice Claims</u>

Christopher Palermo entered the MCDC in March of 2008.  Upon
his intake at the MCDC, Palermo notified MCDC staff that he
required a vegetarian religious diet because he follows the Wicca
religion.  Palermo provided MCDC staff with copies of paperwork
showing that chaplains in other jails had approved his request
for a religious diet.  For the first four days that Palermo was
at the MCDC, he was supplied with a vegetarian diet.  After four
days, MCDC Kitchen Officer Kevin Austin denied Palermo's

religious diet because  the MCDC Chaplain had not yet assessed Palermo's need for such a diet.  Palermo was then provided with a non-vegetarian diet, forcing him to either violate his religious beliefs or to go hungry.

When Palermo arrived at the MCDC, he also requested that the Chaplain obtain certain religious items, religious texts, and literature that were necessary for him to be able to effectively and meaningfully practice his religion.  For two weeks, Palermo was denied these items, or any items related to his religious practice.  As a result, Palermo was not able to observe a religious holiday that fell during that time period.  Palermo claims that members of other religions are routinely provided with religious items and writings that are necessary for the effective practice of their religion, and that he was denied access to these items because the MCDC failed to recognize his religious practice as legitimate.

2.   Facts Relating to Vision Care Claim

On March 5, 2008, Palermo asked Paul Sylvester, an MCDC physician's assistant, to arrange an eye examination so that he could replace his glasses.  Palermo explained to Sylvester that his glasses were lost during his arrest, and that he has an

astigmatism, and without corrective lenses, his eyesight will worsen.  Sylvester advised Palermo that an eye examination would cost Palermo $200, and that he didn't care about whether or not Palermo's eye condition would worsen.  When threatened with legal action for a lack of adequate vision care, Sylvester told Palermo "Go ahead, I'm above the law."

3.   <u>Facts Relating to Law Library Claim</u>

Palermo claims that the only legal research materials available to inmates is a single Lexis/Nexis database terminal. Palermo requested access to this database to prepare for his pending criminal case.  For two weeks of his incarceration at the MCDC, Palermo was not given access to any means of conducting legal research, and was told that he might have to wait up to two months to get access to the Lexis/Nexis database.  Palermo identifies MCDC Officer Jim Lewko as the official responsible for denying him access to legal research at the jail.

Palermo claims that his efforts to pursue his criminal case have been hindered by his inability to conduct legal research at the MCDC in a timely fashion.  Specifically, Palermo was delayed in making certain court filings, was unprepared for hearings on

motions, and missed filing deadlines altogether in his criminal case.

4.   <u>Facts Relating to Toothpaste Claim</u>

Palermo states that the MCDC has provided him with toothpaste that has been imported from a foreign country and has not received approval from the United States Food and Drug Administration ("FDA") or the American Dental Association ("ADA").  This toothpaste, he alleges, has caused the enamel on his teeth to wear off, creating a painful dental issue.  In addition, Palermo alleges that he feels sick every time he uses the toothpaste.  Palermo sought relief from MCDC Officer Dan Wells who failed to remedy the situation.

<u>Discussion</u>[3]

I.   <u>Section 1983 Claims</u>

Section 1983 creates a cause of action against those who, acting under color of state law, violate federal constitutional or statutory law.  <u>See</u> 42 U.S.C. § 1983[4]; <u>Parratt v. Taylor</u>, 451

---

[3]The claims as identified herein will be considered for all purposes to be the claims raised in the complaint.  If Palermo disagrees with this identification of the claims, he must properly move to amend his complaint.

[4]42 U.S.C. § 1983 provides that:

Every person who under color of any statute,

6

U.S. 527, 535 (1981) (overruled on other grounds by Daniels v.
Williams, 474 U.S. 327, 330–331 (1986)); Wilson v. Town of
Mendon, 294 F.3d 1, 6 (1st Cir. 2002).  In order for a defendant
to be held liable under § 1983, his or her conduct must have
caused the alleged constitutional or statutory deprivation.  See
Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978); Soto v.
Flores, 103 F.3d 1056, 1061–62 (1st Cir. 1997).  Because
Palermo's claims allege violations of federal constitutional and
statutory law by state actors, his suit arises under § 1983.

II.  Pretrial Detainee Status

    Palermo was a pretrial detainee at the MCDC at the time the
events he describes occurred.  Detainees have a constitutional
right under the due process clause of the Fourteenth Amendment to
be free of punishment.  See Surprenant v. Rivas, 424 F.3d 5, 15
(1st Cir. 2005) (citing O'Connor v. Huard, 117 F.3d 12, 15 (1st
Cir. 1997)).  However, challenged conditions or restrictions
which can be rationally related to some legitimate administrative

_____

        ordinance, regulation, custom, or usage, of any
        State or Territory or the District of Columbia,
        subjects, or causes to be subjected, any citizen
        of the United States or other person within the
        jurisdiction thereof to the deprivation of any
        rights, privileges, or immunities secured by the
        Constitution and laws, shall be liable to the
        party injured in an action at law . . . .

goal or security concern generally will not be deemed unconstitutional "punishment."  O'Connor, 117 F.3d at 15. Because the Due Process Clause prohibits the infliction of punishment on a person prior to a judgment of conviction, the issue in evaluating claims by a pretrial detainee is ultimately whether the conditions of confinement were reasonably related to a legitimate state interest or were intended instead as punishment.  See Surprenant, 424 F.3d at 13; Collazo-Leon v. U.S. Bureau of Prisons, 51 F.3d 315, 317 (1st Cir. 1995).

III. Claims Regarding Religious Practice

     A.   The First Amendment/Free Exercise Clause

The First Amendment of the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."  The first religion clause of the First Amendment, the Establishment Clause, mandates the separation of church and state.  The second religion clause of the First Amendment, the Free Exercise Clause, requires that government respect and not interfere with the religious beliefs and practices of those protected by the United States Constitution.  See Cutter v. Wilkinson, 544 U.S. 709, 719 (2005).

A prisoner "retains those First Amendment rights that are
not inconsistent with his status as a prisoner or with the
legitimate penological objectives of the corrections system."
Pell v. Procunier, 417 U.S. 817, 822 (1974).  The retained rights
include the right to the free exercise of religion.  Cruz v.
Beto, 405 U.S. 319, 322 (1972).  Prisons must provide all inmates
reasonable opportunities to exercise religious freedom.  Id. at
322, n.2.  When a prisoner raises a Free Exercise Clause claim,
he must "establish that a challenged policy restricts the
inmate's free exercise of a sincerely held religious belief."
Brown-El v. Harris, 26 F.3d 68, 69 (8th Cir. 1994); Barnett v.
Comm'r, N.H. Dep't of Corr., No. Civ. 98-305-JD, 2000 WL 1499490
at *2 (D.N.H. Apr. 26, 2000).

The Supreme Court has held that a prisoner's sincerely held
religious beliefs must yield, however, if contrary to prison
regulations that are "reasonably related to legitimate
penological interests."  Turner v. Safley, 482 U.S. 78, 89
(1987); see O'Lone v. Estate of Shabazz, 482 U.S. 342, 351-352
(1987) (finding that the Constitution does not require the prison
to sacrifice legitimate penological objectives to satisfy an
inmate's desire to exercise his religion so long as an inmate is

9

not deprived of all forms of religious exercise).  A prison regulation must have a logical connection to the legitimate governmental interests invoked to justify it.  <u>Turner</u>, 482 U.S. at 89-90.  That connection may not be "so remote as to render the policy arbitrary or irrational."  <u>Id.</u>  Prisons must provide all inmates reasonable opportunities to exercise their religious freedom.  <u>See</u> <u>Cruz</u>, 405 U.S. at 322 n.2.  Free exercise claims brought by prisoners are "judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights."  <u>Ford v. McGinnis</u>, 352 F.3d 582, 588 (2d Cir. 2003) (quoting <u>O'Lone</u>, 482 U.S. at 349); <u>see</u> <u>also</u> <u>Shaw v. Murphy</u>, 532 U.S. 223, 227-229 (2001).

    B.   <u>The RLUIPA</u>

Palermo's allegation that he was denied access to a religious diet and religious items can also be construed as a claim brought under the RLUIPA which, in certain circumstances, prohibits government infringement on the practice of religion.  <u>See</u> <u>Mayweathers v. Newland</u>, 314 F.3d 1062, 1065 (9th Cir. 2002). Under the RLUIPA, governmental imposition of a "substantial burden on the religious exercise" of a prisoner is prohibited,

unless the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000cc-1(a).  The phrase "religious exercise" is to be construed liberally to include belief and professing of one's faith as well as the performance of physical acts, such as assembling with others to worship.  See Cutter, 544 U.S. at 720.

    C.   <u>Wicca</u>

"'Wicca is a polytheistic faith based on beliefs that prevailed in both the Old World and the New World before Christianity.'"  <u>Kay v. Bemis</u>, 500 F.3d 1214, 1219 n.5 (10th Cir. 2007) (quoting <u>O'Bryan v. Bureau of Prisons</u>, 349 F.3d 399, 400 (7th Cir. 2003)).  As such, Wicca is a religion that has been practiced and recognized for thousands of years.  Palermo asserts that the MCDC chaplain and administration have refused to recognize Wicca as his religion, and, therefore, his constitutionally protected right to practice his religion.  As a result, Palermo was not provided with a religious diet, religious ritual items, or religious literature.  For purposes of preliminary review I find that nothing in the complaint indicates any reason to disbelieve the sincerity of Palermo's religious

belief.  Further, I find that religious diets, ritual items, and religious texts can be important aspects of religious practice or expression.

I find, therefore, that the complaint adequately alleges that defendants Plenge, Austin, and MCDC Superintendent Ron White, who is responsible for the administration of MCDC policy, have acted to substantially burden Palermo's religious practice by denying him a religious diet, religious ritual items, and religious texts.  Nothing in the facts alleged indicates or implies that denying Palermo access to these opportunities to practice his religion furthered any compelling governmental interest, or was the least restrictive means of furthering such an interest.  Accordingly, Palermo's allegations suffice to state claims against Plenge, Austin, and White, under both the Free Exercise Clause of the First Amendment and the RLUIPA.

IV.  Equal Protection Claim

"The essence of the Equal Protection Clause is that government should treat similarly situated persons alike." Street v. Maloney, 991 F.2d 786, at *4 (1st Cir. 1993) (citing Cleburne v. Cleburne Living Ctr., 473 U.S. 432 (1985)); see also Feeley v. Sampson, 570 F.2d 364, 371 (1st Cir. 1978) (explaining

that prison authorities' decisions in differentiating the
treatment between similarly situated inmates cannot be
arbitrary).  Where accommodations that are made for inmates to
practice one religion, such as the provision of a vegetarian diet
or particular religious item, but are denied to a member of
another religion arbitrarily, and the difference in treatment
cannot be attributed to a legitimate penological interest, the
failure to provide the accommodation may be unduly restrictive of
the religious practice of the inmate denied the accommodation.
See Street, 991 F.2d at *4 (discussing that allowing rosary beads
to Catholic inmates while denying prayer beads to inmates of
other religions may violate equal protection).

     Here, Palermo alleges that he sought a vegetarian diet as
well as religious texts and items.  Palermo claims that such
items are routinely provided to inmates who practice other
religions, but were denied to him based on the arbitrary failure
to recognize Wicca as a religion by the MCDC.  Accordingly, I
find that Palermo has stated the minimum facts necessary to
allege that he was discriminated against on the basis of his
religious beliefs, rather than treated differently on the basis
of legitimate penological concerns that distinguished his

situation, and that he was therefore denied equal protection of the laws.  I will therefore direct that this claim be served on defendants Austin, Plenge, and White.

V.    <u>Inadequate Vision Care Claim</u>

To state a cause of action under § 1983 premised on inadequate medical care, a plaintiff must allege facts which demonstrate that the defendant acted with deliberate indifference to the prisoner's serious medical needs.  <u>Estelle</u>, 429 U.S. at 106; <u>Bean v. Cunningham</u>, 650 F. Supp. 709, 713 (D.N.H. 1986). Deliberate indifference may be manifested by prison medical personnel in their response to prisoners' needs or by prison personnel "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." <u>Estelle</u>, 429 U.S. at 104–05.  As to the second essential element, "[a] medical need is 'serious' if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." <u>Gaudrealt v. Salem</u>, 923 F.2d 203, 208 (1st Cir. 1990).  An allegation of inadequate vision care can support a valid § 1983 action

challenging the improper denial of medical care.  <u>See</u> <u>Koehl v.</u>
<u>Dalsheim</u>, 85 F.3d 86, 88 (2d Cir. 1996).

Palermo has demonstrated that he had a diagnosed need for
vision correction for his astigmatism, which is a serious medical
condition, and that Sylvester nevertheless refused to provide him
with an eye examination or eyeglasses.  Palermo has alleged
sufficient facts, therefore, to state a claim for inadequate
vision care to allow this claim to proceed against Sylvester.
Additionally, to the extent that Palermo challenges the policy of
requiring inmates to pay $200 to have an eye examination for
evaluation and treatment of a diagnosed vision problem, I find
that Palermo has stated a claim against defendant White.

VI.   <u>Denial of Access to the Courts Claim</u>

Although not entitled to all of the constitutional rights
guaranteed to nonincarcerated people, prisoners maintain a
constitutional right of access to the courts that affords them
access to the tools necessary to challenge their criminal cases,
criminal convictions and sentences directly or collaterally, to
file habeas petitions, or to challenge the conditions of their
confinement through civil rights actions.  <u>Lewis v. Casey</u>, 518
U.S. 343, 345 (1996).  In order to state a claim for denial of

access to the courts under § 1983, a prisoner must demonstrate
that the prison officials' actions "hindered his efforts to
pursue a legal claim" that he is constitutionally entitled to
pursue during his incarceration.  Id. at 351.

Here, Palermo claims that the only access inmates at the
MCDC have to legal research is by way of a single terminal
accessing the Lexis/Nexis system, which he claims is inadequate
to timely meet the research needs of the inmates who use it.
This dearth of access to legal research causes significant delays
in the inmates' access to legal research which, according to
Palermo, have hindered the pursuit of his legal claims, resulting
in the deprivation of his right to meaningfully access the
courts.  I find that Palermo has stated the minimum facts
necessary to allege a violation of his right to access the
courts, and I will direct that this claim be served.  Palermo
claims that defendant Lewko is the individual at the MCDC who
refused to provide him with adequate access to legal research
materials.  I also find that White, as the Superintendent of the
MCDC can be reasonably inferred to be aware of the MCDC's lack of
law library facilities, and is therefore also an appropriately
named defendant to this claim.

16

VII. <u>Endangerment Claim</u>

Palermo alleges that his safety was endangered when MCDC officials provided him with toothpaste that wore the enamel off of his teeth and made him sick.[5]   The safety and security of all prisoners is protected by the constitution.  See <u>DeShaney v. Winnebago County Dep't of Soc. Servs.</u>, 489 U.S. 189, 190 (1989); <u>Youngberg v. Romeo</u>, 457 U.S. 307, 315–16 (1982).   To state a constitutional claim that the defendants endangered him, Palermo must allege that the defendants were aware of and deliberately indifferent to a serious risk to his safety.   See <u>Burrell v. Hampshire County</u>, 307 F.3d 1, 7 (1st Cir. 2002).   Here, Palermo claims that he suffered significant and painful damage to his teeth, as well as his health, from the toothpaste provided by the MCDC.[6]   Palermo states that MCDC officials were aware of the

---

[5]Palermo characterizes his claim as a violation by defendants of consumer protection laws as the toothpaste in question was not approved by the FDA or the ADA.   There is no constitutional right to FDA or ADA approved toothpaste.   <u>See e.g.</u>, <u>Demeter v. Prison Med. Dep't</u>, No. CIV.A. 01–3720, 2002 WL 59352, at *3 (E.D. Pa. 2002).   I therefore construe this as an endangerment claim.

[6]According to the FDA website, that organization warned consumers in the fall of 2007 that potentially poisonous toothpaste was being imported from China.   The toothpaste brands at issue were those containing a poisonous chemical called diethylene glycol.   In addition, the FDA has identified that certain toothpastes are manufactured overseas and counterfeited

17

problem, as he complained to Officer Dan Wells about it.  Wells refused to remedy the situation.  Additionally, defendant White, as the Superintendent, is the administrator responsible for providing safe hygiene items to inmates.  Accordingly, I find that Palermo has alleged an endangerment claim upon which relief might be granted against both Wells and White.

<u>Conclusion</u>

For the reasons stated herein, I find that Palermo has sufficiently stated claims alleging violations of his rights to adequate medical care, to practice his religion, to equal protection of the laws, to meaningfully access the courts, and to have his safety protected, to allow this action to proceed against defendants White, Lewko, Plenge, Wells, Austin, and Sylvester.  Accordingly, I order that the complaint be served on those defendants.

My review of the file indicates that Palermo has completed summons forms for each defendant.  The Clerk's office shall issue

---

for sale in this country and Canada as recognizable brand names, such as Colgate.  <u>See</u> http://www.fda.gov/oc/opacom/hottopics/ toothpaste.html.  Palermo has not indicated, and may not know, the specific brand of toothpaste provided by the MCDC, or the specific ingredient or ingredients in the toothpaste causing harm.

the summonses against defendants and forward to the United States Marshal for the District of New Hampshire (the "U.S. Marshal's office") the summonses and copies of the complaint (document no. 1), and this Order.  Upon receipt of the necessary documentation, the U.S. Marshal's office shall effect service upon Defendants. See Fed. R. Civ. P. 4(c)(2).

Defendants are instructed to answer or otherwise plead within twenty days of service.  See Fed. R. Civ. P. 12(a)(1)(A).

Palermo is instructed that all future pleadings, written motions, notices, or similar papers shall be served directly on the Defendants by delivering or mailing the materials to them or their attorney(s), pursuant to Fed. R. Civ. P. 5(b).

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge

Date:  September 5, 2008

cc:   Christopher M. Palermo, pro se